**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TANIECE WILLIAMS, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD O.W.**<br>**239 WOODBRIDGE ROAD**<br>**CLIFTON HEIGHTS, PA 19018**<br><br>**PLAINTIFFS,**<br><br>**V.**<br><br>**DELAWARE COUNTY INTERMEDIATE UNIT**<br>**3940 LOCUST LANE**<br>**HARRISBURG, PA 17109**<br><br>**JOHN/JANE DOE 1 (“ADMINSTRATOR DOE”)**<br><br>**JOHN/JANE DOE 2 (“CLASSROOM STAFF DOE”)**<br><br>**and**<br><br>**JOHN/JANE DOES 3 – 10.**<br>**Defendants.** | : | **CIVIL ACTION No.**<br><br>**JURY DEMANDED** |

**COMPLAINT**

Plaintiffs, Taniece Williams, individually and on behalf of her minor child, O.W., by and through undersigned counsel, allege as follows:

## I. INTRODUCTION

1. This civil rights action arises from the repeated physical abuse of a child under two years old by his teachers and caregivers at a Head Start classroom operated by the Delaware County Intermediate Unit (“DCIU”) at its facility known as CTE Folcroft, located at 701 Henderson Blvd, Folcroft, PA 19032.

2. Rather than protect this vulnerable toddler, DCIU and its employees ignored prior injuries, failed to investigate or report suspected abuse, falsified the results of a video review, concealed wrongdoing, and only acknowledged "disturbing" conduct after being compelled by subpoena.

3. The abuse was captured on surveillance footage and included dropping the child, mushing his face into a cot, using a blanket to cover his face, and forceful or harsh handling.

4. Three DCIU employees were present in the classroom during the abusive conduct. None intervened; none reported the abuse as required by law.

5. Plaintiffs seek compensatory and punitive damages, as well as injunctive relief requiring DCIU to implement proper training, supervision, reporting protocols, and child safety measures.

## II. JURISDICTION AND VENUE

6. This action arises under the Fourteenth Amendment and 42 U.S.C. § 1983.

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), as all events occurred within this District.

## III. PARTIES

9. Plaintiff Taniece Williams is an adult individual residing in Pennsylvania and the natural guardian of O.W., born March 6, 2023.

10. At all relevant times, O.W. was between 21 and 23 months old, highly vulnerable, non-verbal, and entirely dependent on adult supervision.

11. Defendant Delaware County Intermediate Unit ("DCIU") is a municipal education agency operating early childhood programs, including Head Start, within Delaware County.

12. Defendant Stephanie Callahan was a DCIU classroom employee responsible for supervising and caring for O.W. during the events described herein.

13. Defendant Rochelle Weaver was a DCIU classroom employee responsible for supervising and caring for O.W. during the events described herein.

14. Defendant John/Jane Doe 1 ("Administrator Doe") was the DCIU administrator responsible for responding to parental complaints, reviewing surveillance footage, ensuring compliance with mandated reporting laws, and supervising classroom staff. Administrator Doe's exact identity is presently unknown to Plaintiffs. Plaintiffs will amend this complaint to substitute the correct name once identified through discovery.

15. Defendant John/Jane Doe 2 ("Classroom Staff Doe") was the third adult present in the classroom during the abusive conduct captured on surveillance footage and was listed by police as a witness. Classroom Staff Doe failed to intervene and failed to report suspected child abuse, despite being a mandated reporter. Plaintiffs will amend the complaint to substitute the correct identity when known.

16. Defendants John/Jane Does 3–10 are additional DCIU employees whose identities are currently unknown but who participated in, supervised, concealed, or failed to act upon the misconduct alleged herein. Plaintiffs will amend the complaint to substitute their true identities upon discovery.

## IV. BACKGROUND REGARDING DCIU

17. The Delaware County Intermediate Unit ("DCIU") is a public intermediate unit created under Pennsylvania law to provide educational, administrative, and support services to school districts, early childhood programs, and families in Delaware County.

18. DCIU operates multiple early childhood programs, including Head Start, Early Head Start, Pre-K Counts, and Early Intervention programs serving infants, toddlers, and preschool-age children.

19. DCIU employees act under color of state law for purposes of 42 U.S.C. § 1983.

20. DCIU maintains several early childhood facilities, including the CTE Folcroft facility at 701 Henderson Blvd, Folcroft, PA 19032, where the events at issue occurred.

21. DCIU is responsible for hiring, training, and supervising teachers, aides, administrators, and support staff who interact with young children daily.

22. DCIU is required to maintain policies governing child supervision, mandated reporting, surveillance usage, investigation of incidents, and staff training.

23. At all relevant times, the individual defendants acted pursuant to DCIU's policies, customs, practices, or failures thereof.

## V. FACTUAL ALLEGATIONS

24. In December 2024, Plaintiff observed marks on her child's face after school and reported the injuries to DCIU staff. DCIU failed to investigate, failed to review surveillance footage, and failed to make a mandatory ChildLine report as required under Pennsylvania law.

25. On February 25, 2025, while picking up her child from the CTE Folcroft facility, Plaintiff observed new injuries, including a scratch under the right eye, a mark across the bridge of the nose, an injury to the upper lip, and visible swelling.

26. She immediately reported the injuries to DCIU officials, who denied any incident had occurred and refused to make a mandatory report to ChildLine, stating that they "did not believe" any abuse occurred.

27. Concerned for her child's safety and DCIU's refusal to investigate, Plaintiff contacted police. EMS was requested, but Plaintiff declined EMS transport and instead transported her son to Children's Hospital of Philadelphia (CHOP) for medical evaluation.

28. On February 28, 2025, DCIU staff contacted Plaintiff and stated that they had reviewed "about an hour" of surveillance footage and that "nothing happened," claiming that O.W. had been "sleeping on a cot the entire time" and that "the kids are well taken care of."

29. During the February 28 call, Plaintiff asked to view the footage herself. DCIU refused, stating that she "could not see the video," without providing any legal basis for the refusal.

30. On March 6, 2025, the assigned police detective contacted Plaintiff and informed her that the police had obtained a search warrant for the classroom cameras and would be obtaining the footage directly from the school.

31. On March 7, 2025, after learning that law enforcement had secured the footage, DCIU staff contacted Plaintiff and admitted that they had "seen abuse" on the video. However, DCIU refused to disclose what they saw, claiming it was an "ongoing investigation," and told Plaintiff that someone from Children & Youth Services (CYS) would contact her.

32. DCIU's March 7 admission directly contradicted their February 28 statement that "nothing happened" and that O.W. "was asleep the entire time," demonstrating deliberate misrepresentation and concealment of material facts.

33. At no time prior to the teachers' arrests did DCIU provide Plaintiff with an explanation of what happened to her child or disclose the abusive conduct caught on surveillance footage.

34. On March 28, 2025, Plaintiff learned the details of what occurred to her child not from DCIU, but from media reporting in the Delco Daily Times following the arrest of the involved teachers. This was the first time she learned the nature and extent of the abuse inflicted on her son.

35. Surveillance footage revealed that Defendant Stephanie Callahan and Defendant Rochelle Weaver engaged in multiple acts of physical abuse against O.W., including dropping him, mushing his face into a cot, covering his face with a blanket, handling him with unnecessary and excessive

force, and otherwise engaging in conduct that no reasonable educator would consider appropriate for a toddler under two years old.

36. Classroom Staff Doe (John/Jane Doe 2) was present in the classroom during these abusive acts and was listed as a witness in police documents.

37. Despite being a mandated reporter, Classroom Staff Doe failed to intervene, failed to make any report to ChildLine, and failed to take any action to protect O.W.

38. DCIU repeatedly failed to implement or enforce adequate training, supervision, reporting protocols, or investigation procedures within its early childhood programs.

39. These failures included ignoring parental complaints, refusing to show a parent video footage, failing to review surveillance in a timely or truthful manner, intentionally misrepresenting the content of the footage, failing to report suspected abuse, conducting sham investigations, allowing inadequately trained staff to supervise vulnerable toddlers, and concealing evidence of misconduct.

40. DCIU's systemic failures, including deliberate misrepresentations on February 28 and partial admission only after law enforcement intervened on March 7, were the moving force behind the prolonged abuse suffered by O.W.

## COUNT I – 42 U.S.C. § 1983
### Substantive Due Process – Bodily Integrity
### Against Stephanie Callahan and Rochelle Weaver

41. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein.

42. At all relevant times, O.W. had a clearly established constitutional right, under the Fourteenth Amendment, to be free from excessive force and bodily harm inflicted by state actors.

43. Stephanie Callahan and Rochelle Weaver, acting under color of state law, repeatedly used excessive, harmful, and malicious force against O.W.

44. Their conduct, captured on video, included dropping the toddler, mushing his face into a cot, and harsh or aggressive handling.

45. Such conduct was intentional, malicious, and shocks the conscience.

46. As a direct and proximate result, O.W. suffered physical and emotional injuries.

**COUNT II – 42 U.S.C. § 1983**
**(Failure to Intervene)**
**Against Stephanie Callahan, Rochelle Weaver, and John/Jane Doe 1 - 10**

47. Plaintiffs incorporate all prior paragraphs.

48. All three classroom staff members were present during one or more acts of abuse inflicted on O.W.

49. Each defendant had the ability and opportunity to prevent or stop the abuse.

50. None intervened, redirected the staff, or otherwise protected the child.

51. Their failure to intervene directly contributed to the constitutional injuries suffered by O.W.

**COUNT III – 42 U.S.C. § 1983**
**(Supervisory Liability)**
**Against John/Jane Doe #1**

52. Plaintiffs incorporate all prior paragraphs.

53. Defendant John/Jane Doe 1 was responsible for supervising staff, responding to injury reports, reviewing video, and ensuring compliance with safety and reporting protocols.

54. Defendant John/Jane Doe 1 had actual notice of prior injuries in December 2024 and failed to investigate or take corrective action.

55. On February 25, 2025, Defendant John/Jane Doe 1 again ignored warnings of abuse and refused to make a mandated report.

56. On February 28, 2025, Defendant John/Jane Doe 1 falsely stated that a video review showed "nothing wrong."

57. Defendant John/Jane Doe 1 acted with deliberate indifference and her failures were a moving force behind the constitutional injuries.

**COUNT IV – 42 U.S.C. § 1983**
**(Monell – Failure to Train)**
**Against DCIU**

58. Plaintiffs incorporate all prior paragraphs.

59. DCIU failed to adequately train staff in:

a. mandated reporting requirements,
b. safe handling of infants/toddlers,
c. supervising vulnerable children,
d. responding to parental injury concerns,
e. reviewing and acting upon surveillance footage.

60. The need for training was obvious due to the age and vulnerability of children served.

61. The failure to train was so inadequate that it amounted to deliberate indifference.

62. This failure was a moving force behind the abuse and resulting injuries.

**COUNT V – 42 U.S.C. § 1983**
**(Monell – Failure to Supervise)**
**Against DCIU**

63. Plaintiffs incorporate all prior paragraphs.

64. DCIU failed to properly supervise classroom staff despite prior notice of injuries and multiple warning signs.

65. Inadequate supervision allowed the abuse to occur and continue.

66. This failure constituted deliberate indifference.

**COUNT VI – 42 U.S.C. § 1983**
**(Monell – Custom of Deliberate Indifference)**
**Against DCIU**

67. Plaintiffs incorporate all prior paragraphs.

68. DCIU maintained customs and practices of:

a. ignoring parental complaints,
b. failing to investigate injuries,
c. refusing to report suspected abuse,
d. concealing or misrepresenting evidence,
e. conducting sham investigations,
f. acknowledging misconduct only after subpoena.

69. These customs were widespread and known to administrators.

70. The customs were a moving force behind the violations suffered by O.W.

**COUNT VII – Assault and Battery**
**Against Stephanie Callahan and Rochelle Weaver**

71. Plaintiffs incorporate all prior paragraphs.

72. Stephanie Callahan and Rochelle Weaver intentionally caused harmful and offensive contact to O.W.

73. Their conduct constitutes assault and battery under Pennsylvania law.

74. As a result, O.W. suffered physical and emotional harm.

**COUNT VIII – Intentional Infliction of Emotional Distress**
**Against Stephanie Callahan, Rochelle Weaver, John/Jane Doe 1 – 10**

75. Plaintiffs incorporate all prior paragraphs.

76. Defendants' conduct, including abuse, concealment, and failure to report, was extreme, outrageous, and beyond all bounds of decency.

77. As a direct result, O.W. suffered severe emotional distress.

**COUNT IX – Negligence / Negligence Per Se (Failure to Report)**
**Against Stephanie Callahan, Rochelle Weaver, John/Jane Does 1 – 10**

78. Plaintiffs incorporate all prior paragraphs.

79. Defendants were mandated reporters under 23 Pa.C.S. § 6311.

80. All defendants failed to make a ChildLine report despite observing or receiving notice of injuries and abuse.

81. The failure to report constitutes negligence per se.

82. These failures caused additional harm and prolonged the abuse.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

**A.** Compensatory damages in an amount to be determined at trial for physical injury, emotional distress, pain and suffering, and other losses suffered by O.W.;

**B.** Punitive damages against the individual Defendants, including Stephanie Callahan, Rochelle Weaver, John/Jane Doe 1 ("Administrator Doe"), and John/Jane Doe 2 ("Classroom Staff Doe"), where permitted by law, for their willful, malicious, reckless, and conscience-shocking conduct;

**C.** Declaratory relief declaring that Defendants' conduct violated Plaintiffs' rights under the United States Constitution and applicable state law;

**D.** Injunctive relief against Defendant Delaware County Intermediate Unit, requiring the implementation of appropriate policies, training, supervision, reporting protocols, and safeguards to prevent future abuse of children in its care;

**E.** Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

**F.** Pre-judgment and post-judgment interest as allowed by law;

**G.** Costs of suit; and

**H.** Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**VAN DER VEEN, HARTSHORN, LEVIN & LINDHEIM**

DATE: 1/20/26                BY:  /s/ Michael T. van der Veen

Michael T. van der Veen, Esquire
Steven R. Bryson, Esquire
van der Veen, Hartshorn, Levin & Lindheim
1219 Spruce Street
Philadelphia, PA 19107
mtv@mtvlaw.com
sbryson@mtvlaw.com
(215) 546-1000
(215) 546-8529
*Attorneys for Plaintiff*